FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 13 2015

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT
COURT DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Respondent,* | ) | Case No.: 15-CV-4-F |
| vs. | ) | Criminal No.: 1:10-CR-329-F |
| | ) | |
| MIGUEL ANGEL ORDAZ, | ) | |
| | ) | |
| *Defendant-Petitioner.* | ) | |

### MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255

COMES NOW the Petitioner, MIGUEL ANGEL ORDAZ, by and through undersigned counsel, and hereby submits Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255, because he is confined under a prison sentence which violates his Sixth Amendment right to effective assistance of counsel.

### JURISDICTION AND VENUE

Petitioner seeks relief from a Judgment of this Court entered against him on March 6, 2012, convicting him of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A), and 21 U.S.C. § 846 (Count #1), 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(h) (Count #2), 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B) (Count #11), 18 U.S.C. § 924(c)(1) (Count #12), 18 U.S.C. §924(c)(1)(B)(ii) (Count #13), and 21 U.S.C. §5841 (Count #14) in Case # 1:10-CR-329-F. Petitioner was sentenced on March 5, 2012, by this Court to 120 months imprisonment on Counts #1, #2, and #11, to run concurrent to each other, thirty (30) years on Count #13 served consecutive to Count #1, and twenty-five (25) years on Count #12 consecutive to Count #13. Petitioner is currently in the custody of the United States Bureau of Prisons at USP Pollack under Register # 11826-091 pursuant to the aforementioned Judgment

of Conviction. This Petition is brought pursuant to 28 U.S.C. § 2255, et seq., and Article I, § 9, Clause 2, of the Constitution, and federal question jurisdiction pursuant to 28 U.S.C. §1331. The Declaratory Judgment Act, 28 U.S.C. §2201, §2202, authorizes declaratory relief.

Petitioner was convicted and sentenced by this Court. Thus, venue is proper in the United States District Court for the District of Wyoming, Casper Division. Petitioner was originally rep- resented by Peter J. Timbers, 141 South Center Street, Suite 505, Casper, Wyoming, 82601, appointed by the Court. Michael H. Reese, 211 19th Street, Suite 400, Cheyenne, Wyoming, 82001, was appointed to represent Mr. Ordaz on appeal.

Petitioner filed a Notice of Appeal in this Court on March 6, 2012. Following briefing, the United States Court of Appeals for the Tenth Circuit affirmed the conviction and sentence in a written opinion issued June 27, 2013. *See United States v. Renteria*, 720 F.3d 1245 (2013). Mr. Ordaz, *Pro Se*, sought review in the United States Supreme Court. His Petition for Writ of Certiorari was denied January 13, 2014. *See Ordaz v. United States*, 134 S.Ct. 969. Thus, Petitioner's conviction is final, and this Petition is timely pursuant to the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2244(d)(1); *see also Clay v. United States*, 537 U.S. 522 (2003).

No prior Petition seeking this relief has been filed in this Court, or any other court of competent jurisdiction.

## SUMMARY STATEMENT OF THE FACTS[1]

Information compiled by law enforcement suggested that several members of a gang from Fresno, California – The Fresno Bulldogs – were living in northern Wyoming and distributing methamphetamine from 2007 to 2010. Evidence at trial establishes that in 2009, Robert Velasquez, a co-defendant, became the subject of a drug investigation when a

confidential informant told Special Agent Michael Hall of the Wyoming Division of Criminal Investigation that Velasquez was selling methamphetamine in the Cody, Wyoming area. Hall then contacted law enforcement in the Sheridan area based upon a number of phone calls to that area.

Hall learned that his counterparts in Sheridan were already investigating individuals known as "Noe", "Isaiah", and "Rob" as sellers of methamphetamine. A total of eight individuals were identified in the two investigations that were combined into one. Hall testified as to how the operation worked. Mr. Ordaz, (Daniel) Renteria, and (Robert) Velasquez would periodically receive methamphetamine from Fresno Bulldog members in California. Mr. Ordaz and Mr. Renteria operated mainly around Sheridan. After selling the drugs, Mr. Velasquez, Mr. Ordaz, and Mr. Renteria would wire proceeds to Fresno.

Multiple cooperating witnesses testified to the purchases of methamphetamine from Mr. Renteria, Mr. Ordaz, and Mr. Velasquez. The testimony of one cooperating witness was particularly helpful to the prosecution of the defendants. Melissa Morgan, one of Mr. Velasquez's girlfriends, explained that Mr. Velasquez was periodically sent packages that contained candles, the bottoms of which were hollowed out and contained at least an ounce of methamphetamine each. She described how Mr. Velasquez would remove the methamphetamine, cut it, and then package it for sale. Ms. Morgan described multiple trips she took with Mr. Velasquez to meet with Mr. Ordaz and Mr. Renteria and pick up methamphetamine.

---

[1] This summary of facts is taken from the findings of the Tenth Circuit Court of Appeals in *United States v. Renteria*, 720 F.3d 1245 (2013), and from the Statement of Facts submitted in support of Mr. Ordaz's Initial Brief on Appeal. Mr. Ordaz's appeal was consolidated with those of several co-defendants as there were issues in common with all of the defendants.

Mr. Ordaz and Mr. Renteria likewise traveled on multiple occasions to visit Mr. Velasquez and deliver methamphetamine.

Kimberly Perkins, another cooperating witness, testified she was aware Mr. Renteria and Mr. Ordaz were distributing methamphetamine at their apartment and that she was purchasing it for her own use and resale. She agreed to receive overnight packages of methamphetamine from Mr. Renteria and Mr. Ordaz at both her home and later at the Big R, a feed and hay store in Sheridan where she worked, once a week from March 2009 to February 2010. She testified she never opened the packages and never saw that they contained drugs but rather assumed they did.

John Sullivan, a fraud investigator for UPS (United Parcel Service) testified concerning shipping records linking Mr. Renteria and Mr. Ordaz to shipments coming from Fresno to their addresses. Additional testimony was offered by records custodians of Western Union and Money Gram. Ms. Perkins testified she first delivered the packages to "Noe" (Mr. Renteria) and then in September 2009, she started giving them to "Isaiah" (Mr. Ordaz) until February 2010.

During a search of Mr. Ordaz's home on November 22, 2010, law enforcement officials seized a .38 pistol, a pearl handle 9 mm handgun, a .308 bolt action rifle, a 56 SKS assault rifle, a
.22 long rifle, and associated ammunition. Also recovered was a black bag containing miscellaneous gun parts, including a lower receiver, barrel assembly, and banana clip magazine, as well as a white crystalline substance, a digital scale and weigh pan, and assorted ammunition. Parts to an MP-5-style machine gun were located in the black bag including an upper receiver, a bolt assembly, a lower receiver, a buttstock, a magazine, and a

fore-end. The rear pin, critical to operation, was not found in the bag until sometime during pre-trial preparation months later.

Prior to trial, Mr. Ordaz, through counsel, sought to suppress all of the evidence seized from Mr. Ordaz's home and motions to preclude testimony related to alleged gang affiliation and prior crimes evidence. He also challenged any evidence related to the drug samples found in his home. He argued the drugs were not drugs. Pre-trial, the Government initially offered Mr. Ordaz a deal if he would testify against his co-defendants. Mr. Ordaz rejected the deal and a subsequent offer of 20 years conditioned on each of the defendants accepting that amount of time. Mr. Ordaz lost his Rule 29 bid for a judgment of acquittal.

Mr. Ordaz argued unsuccessfully that there was insufficient evidence to convict him of possession of a machine gun where there was no evidence at trial that Mr. Ordaz did anything with this machine gun that is normally associated with a drug transaction or that it was used in furtherance of any drug conspiracy. No witness ever testified seeing Mr. Ordaz with any weapon during any drug transaction. He further argued the drugs allegedly seized from his home were not drugs at all and requested his attorneys engage an expert to test the samples to prove him correct.

## ARGUMENT

### I. WHERE TRIAL COUNSEL FAILED TO INDEPENDENTLY TEST THE ALLEGED METHAMPHETAMINE DISCOVERED IN MR. ORDAZ'S HOME, MR. ORDAZ RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL AND BUT FOR THE UNREASONABLE ERROR, THERE IS A REASONABLE PROBABILITY THE OUTCOME WOULD HAVE BEEN DIFFERENT.

It is axiomatic that the United States Constitution guarantees each defendant in a criminal prosecution the right to the effective assistance of counsel. *See* U.S. Const. Amend. VI, §1. The fundamental right to the effective assistance of counsel is recognized not for

its own sake, but because of the effect it has on the ability of the accused to receive due process of law in an adversarial system of justice. *See United States v. Cronic*, 466 U.S. 648, 658 (1984). The United States Supreme Court has held that "[t]he benchmark of judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on having produced a just result." *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

Under the *Strickland* standard, ineffective assistance of counsel is made out when the defendant shows that (1) trial counsel's performance was deficient, i.e., that he or she made errors so egregious that they failed to function as the "counsel guaranteed the defendant by the Sixth Amendment," and (2) the deficient performance prejudiced the defendant enough to deprive him of due process of law. *See Strickland*, 466 U.S. at 687. Specifically, the Court stressed that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In the criminal defense setting, counsel must be free to fully advocate on his client's behalf, free from fear of reprisal by the court for advocating what the law allows. Indeed, the United States Supreme Court has indicated that defense counsel is only limited by ethical considerations and the rules of criminal procedure: "[e]thical considerations and rules of court prevent counsel from making dilatory motions, adducing inadmissible or perjured evidence, or advancing frivolous or improper arguments . . ." *See McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988).

A convicted defendant making a claim of ineffective assistance must identify the particular acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. In turn, a court deciding a claim of ineffective assistance of counsel must then judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *See Strickland*, 466 U.S. at 690.

> The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, *the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. Id.* (emphasis added).

The entire basis of the prosecution of Mr. Ordaz was the alleged drugs found in his home after police executed. The drug charges against Mr. Ordaz were the predicates for the enhancements for the guns also recovered during the search. Without the drugs, the Government's case is far different and the potential sentence Mr. Ordaz was exposed to upon conviction was substantially different.

Mr. Ordaz maintained from the beginning that the drugs police allegedly found were not methamphetamine. Police conducted a field test on a substance they believed was an illegal drug and the field test resulted in a "presumptive positive." However, as the trial testimony made clear, police do not make any decisions unless and until the chemists at the state laboratory conclude the substance was, in fact, methamphetamine.

Mr. Ordaz told trial counsel he wanted to get the samples independently tested because he knew the test was wrong and that the supposed trace amounts of methamphetamine detected was not methamphetamine. Trial counsel ignored the request. During trial, trial

counsel spent considerable time cross-examining the chemist who claimed to find "a pinch of methamphetamine" in a sample tested four days after the first tests were inconclusive. Procedures were not followed, by the chemist's own admission, and the lack of a consistent result, including a remarkable spike in the test results the Government relied upon, left the determination seriously in doubt.

Trial counsel, though, could not present any affirmative evidence that the drugs were not, in fact, methamphetamine. Following the close of the Government's evidence, trial counsel moved for judgment of acquittal in part based upon the allegation the drugs were not drugs and the testimony was insufficient to support a guilty finding. However, absent an independent test to back up his theory, trial counsel was left with only his client's speculation.

"A lawyer who fails adequately to investigate, and to introduce into evidence, records ... that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *See Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999). Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *See Strickland*, 466 U.S. at 691. In *Wiggins v. Smith*, 539 U.S. 510, (2003), the Supreme Court clarified that the relevant inquiry "is not whether counsel should have presented [independent test results] but rather, "whether the investigation supporting counsel's decision *was itself reasonable.*" *Id.* at 523. The Supreme Court stated that "[i]n assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id.*

8

Here, Mr. Ordaz requested his lawyer obtain an independent examination of the alleged methamphetamine to demonstrate that it was, in fact, not drugs. This was central to Mr. Ordaz's claim of innocence of the charges against him. Without the drugs, the Government's case was substantially weakened and more importantly, the consecutive mandatory minimum sentences imposed under 28 U.S.C. 942(c) would not have had the requisite predicate felony upon which they were based.

There is "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions." *See Cullen v. Pinholster,* 131 S. Ct. 1388, 1406 (2011). As a result, the analysis begins with the premise that "the challenged action[s] might be considered sound trial strategy." *Id.* at 1404 quoting *Strickland,* 466 U.S. at 689. Here, the is no reasonable explanation for failing to investigate independently whether the alleged methamphetamine was, in fact, methamphetamine or something else. Given the questionable lab results, independent verification was warranted.

## II. WHERE THERE WAS INSUFFICIENT EVIDENCCE THAT THE MACHINE GUN ALLEGEDLY POSSESSED BY MR. ORDAZ WAS "IN FURTHERENCE OF A DRUG CONSPIRACY" MR. ORDAZ'S CONVICTION RESULTED IN A DENIAL OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL.

The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation. *See In re Winship*, 397 U.S. 358, 361 (1970). Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required. *Id.*, at 362 (citations omit- ted).

> "The reasonable-doubt standard is a prime instrument for reducing the risk of convictions resting on factual error and provides concrete substance for the presumption of innocence— that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'"

*Id.,* citing *Coffin v. United States,* 156 U.S. 423, 453 (1895).

"In short, *Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reason- able doubt of the existence of every element of the offense." *See Jackson v. Virginia,* 443 U.S. 307, 316 (1979). Where a conviction is based upon insufficient evidence, the conviction results in an unconstitutional denial of the right to due process and a fair trial.

To sustain a conviction for possession of a firearm in furtherance of a drug trafficking crime, the Government must prove that (1) Mr. Ordaz possessed a firearm and (2) this possession was in furtherance of a drug trafficking crime. *See United States v. Poe,* 556 F.3d 1113, 1127 (10th Cir. 2009). Alleging specifically that a machine gun was "in furtherance of" a drug conspiracy is an element of the offense and thus must be proved beyond a reasonable doubt. *See United States v. O'Brien,* 130 S.Ct. 2169, 2172 (2010).

The Government failed to adduce any evidence at trial, even through myriad cooperating witnesses to whom it gave sweetheart deals in exchange for immunity or for cooperating with the investigation, that Mr. Ordaz possessed this machine gun, found inoperable and in parts, in furtherance of a drug crime. Specifically, the only predicate offense to which the machine gun could be reasonably connected was the conspiracy alleged in Count One. *Every* cooperating witness denied ever seeing Mr. Ordaz with *any* weapon

during any drug transaction, let alone the inoperable machine gun found in parts in a black duffle bag seized from Mr. Ordaz's home after his arrest.

The Government's evidence rested on some photographs displayed in his home of various weapons. Mr. Ordaz was an admirer or weapons as Candice Kysar testified, because she, too, shared a fondness for different weapons. Rather than admit its utter lack of any evidence, the Government doubled down. The Government's position is stated most clearly in its response to Mr. Ordaz's motion for judgment of acquittal.

> "So I think, given that, the fact that - - and the pictures here which were displayed in the house with guns on the mantels, with pictures and so forth, certainly that does give the inference that they wanted to, particularly with defendant Ordaz, wanted to assert the fact that he has guns available and he could enforce his drug debts or collect on his drug debts and that individuals should not mess around with him with regards to drug activities."

This bold assertion, with no evidence to support it and practically speaking, grasping at straws, the Government alleged it had sufficient evidence to convict Mr. Ordaz. But this is flatly contrary to controlling precedent, specifically *United States v. Iiland*, 254 F.3d 1264 (10th Cir. 2001). There, the Court specifically held that mere possession was insufficient to sustain an "in furtherance" conviction. At best the Government demonstrated pictures of guns and an inoperable weapon in parts, some of which were missing and had to be supplied by the Government, in a duffle bag in Mr. Ordaz's home when he was not present. No evidence was ever presented by any witness saying Mr. Ordaz possessed this inoperable machine gun during any activity connected with the conspiracy.

In order to prove that a weapon was possessed in furtherance of a drug trafficking offense, the Government was required to show the gun "at least must facilitate or have the potential to facilitate the drug trafficking offense." *See Iiland*, 254 F.3d at 1273. Additionally, the Government must show beyond a reasonable doubt the firearm, in this case the

inoperable machine gun found in parts (with pieces missing) had the specific purpose of playing *an integral role* in the drug trafficking offense *and* Mr. Ordaz intended the weapon to be available *and* that Mr. Ordaz availed himself to the weapon. No such evidence was ever produced and based upon the Government's incredible argument again the motion for judgment of acquittal, even the Government could not cite sufficient evidence.

"Mere possession of a firearm does not establish the 'in furtherance' element of a §924(c)." *See United States v. Garza*, 566 F.3d 1194, 102 (10th Cir. 2009). The Government must prove, beyond a reasonable doubt, the machine gun Mr. Ordaz allegedly possessed was "kept available for use should it be needed during a drug transaction" and that Mr. Ordaz "intended the firearm to be accessible for that purpose." *See Poe*, 556 F.3d at 1127. Given the machine gun was in pieces (with parts missing or damaged that were replaced or repaired by the Government just in time for trial) it was hardly available for use and accessible for use during a drug transaction.

Based upon the complete and utter lack of any evidence connecting this inoperable machine gun found in pieces (some of which were missing and/or damaged) to any drug trafficking offense, and the complete lack of evidence sufficient to show the inoperable machine gun found in pieces was "in furtherance" of a drug trafficking offense, Mr. Ordaz's conviction is contrary to controlling law and resulted in a violation of his right to due process and a fair trial.

WHEREFORE, premises considered, Defendant Miguel Ordaz, by and through counsel, requests this Court grant his Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 and release him from prison; or, in the alternative, to order an evidentiary hearing to resolve the claims raised herein; and, issue

an order vacating the illegal sentence against Mr. Ordaz and order re-sentencing; and for such other and further relief as may be fair, just and equitable.

**DATED** this 13th day of January, 2015.

                                              Respectfully submitted,

                                              /s/ *Ericka S. Smith*
                                              Ericka S. Smith, #6-3444
                                              SMITH TORTORICH LLC
                                              P.O. Box 4217
                                              1916 House Avenue
                                              Cheyenne, WY 82003
                                              Phone: 307-459-2626
                                              Fax: 307-459-4121
                                              esmith@smithtortorich.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic filing though the CM/ECF system to all counsel of record on this, the 13th day of January, 2015.

                                              /s/ *Ericka S. Smith*